385 So.2d 1378 (1980)
Pearl Dorothea RELYEA, Individually and As Administratrix of the Estate of Donna J. Fink, Deceased, Appellants,
v.
STATE of Florida; the Board of Regents of the State of Florida; the Chancellor of the State University System of Florida and Pacific Indemnity Insurance Company, Appellees.
George A. MAHNKE and Arlanda Mahnke, Individually and As Administratrix of the Estate of Marlene Mahnke, Deceased, Appellants,
v.
STATE of Florida et al., Appellees.
Nos. 76-1619, 76-1620.
District Court of Appeal of Florida, Fourth District.
July 23, 1980.
*1379 Donald F. Geffner, Miami, Carl W. Taylor, Fort Lauderdale, and Harry A. Wilson and John M. Choplin, II of Wilson & Tabor, Indianapolis, Ind., for appellants.
Michael B. Davis of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for appellees.
Robert L. Shevin, Atty. Gen., Tallahassee and Basil S. Diamond, Asst. Atty. Gen., West Palm Beach, for appellee, State of Florida; Winifred L. Wentworth, Gen. Counsel, for State Board of Education, Tallahassee.
MOORE, Judge.
This case involves a tragic incident which occurred on the campus of Florida Atlantic University (FAU) on May 14, 1970. The plaintiffs, as parents and administrators of their respective children's estates, appeal from adverse final judgment entered subsequent to a jury trial in two consolidated wrongful death actions. Prior to trial the court denied motions for judgment on the pleadings, and during trial, reserved ruling *1380 on motions for directed verdict at the close of all of the evidence. The jury was unable to reach a verdict, after which the court declared a mistrial and immediately informed counsel of the pending motions for directed verdict, requesting counsel to set the motions for hearing. Counsel were also requested to submit appropriate "judgment orders" in connection with the motions. Renewed motions for judgment on the pleadings and for directed verdict were then granted and final judgments were entered accordingly for the defendants-appellees. We affirm.
Appellants initially contend that the court erred in entertaining the post-trial motions because they were not filed timely as required by Fla.R.Civ.P. 1.480(b). For the reasons expressed below we reject this contention.
Appellants next contend that the appellees had a duty to exercise reasonable care to protect the deceaseds from foreseeable criminal conduct by third persons, and that that duty was breached by the failure to provide adequate security. Thus, it is argued that the court erred in granting the motions for judgment on the pleadings because their complaints stated a cause of action sounding in negligence. They also contend that the directed verdicts were erroneous because their proof established issues of fact for the jury. The appellees argue that, not only did the complaint fail to state a cause of action and the proof at trial fail to support a finding of duty or a breach thereof, but that they are immune from suit under the doctrine of sovereign immunity. We accept the appellees' position in each respect.
In essentially identical complaints the appellants alleged that on May 14, 1970, Donna Fink and Marlene Mahnke were seniors at FAU, enrolled in a course which was taught from 4:30 P.M. to 7:20 P.M. in a building located in a remote, outlying area on the northeast corner of the campus, approximately three quarters of a mile from the main complex of buildings. Both young ladies drove in Miss Fink's car to the building and parked near the building entrance. After class they proceeded to the car where they were assaulted by three men who abducted them, drove them to a secluded area, and murdered them. The complaint further alleged that the appellees (except for Pacific Indemnity Insurance Company) had a mandatory, non-discretionary duty to provide reasonable security for all persons lawfully on the campus, particularly for persons enrolled in classes at the University. Specific allegations of negligence attributed to the defendants were:
(1) By failing to provide an adequate number of security patrols along the roadways, land areas, and buildings on the campus of Florida Atlantic University, and in the parking areas in the vicinity of Building T-6 on said campus;
(2) By failing to provide security guards and security guard stations or gates to control the entrance and egress roadways to said Florida Atlantic University;
(3) By failing to have parking attendants at the remote facility of Building T-6;
(4) By failing to have adequate lighting in the area of Building T-6;
(5) By scheduling late afternoon and evening classes in this building remote from the central complex of Florida Atlantic University, and enrolling students, particularly female students, to attend such classes in a remote area, without adequate police or other security protection for said students;
(6) By failing to provide adequate protection for persons attending classes at said remote building;
(7) By failing to take such other measures which were necessary or reasonable to protect and safeguard the persons and lives of persons lawfully upon the campus, attending said classes; and
(8) By failing to provide a reasonably safe place upon said campus in which the decedents could attend classes and proceed to and from said classes.

*1381 I.
We first consider whether the court erred in considering the motions for judgment on the pleadings and for directed verdicts. Fla.R.Civ.P. 1.140(c) provides:
Motion for judgment on the pleadings. After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.
Here, the jury's inability to reach a verdict resulted in a mistrial. After a mistrial is declared the action remains pending in the same respect as though the trial had never occurred. Thus, the renewed motion was made within such time as not to delay the trial, and therefore, it was made in compliance with the Rule. Even though the court had previously denied the motion it retained the authority to modify or correct its interlocutory ruling.
The motion for directed verdict presents a more difficult situation. Fla.R. Civ.P. 1.480(b) provides that if a verdict is not returned, a party who has previously moved for a directed verdict at the close of all of the evidence may move for judgment in accordance with that motion within ten days after the jury has been discharged. The post-discharge motion, not having been filed within ten days, ordinarily could not be considered by the trial court. However, under the unusual circumstances of this case we find that the motion was properly considered. This is so because: (1) the trial court specifically reserved ruling on the appellees' motions for directed verdict at the close of all of the evidence; (2) immediately after the jury was discharged the court informed counsel that the reserved motions were pending and requested that they be set for hearing; (3) the court specifically requested that appropriate judgment orders in connection with the motions be submitted; and (4) all parties overtly or impliedly agreed to this procedure. Consequently, we hold that the court correctly considered the renewed motions for directed verdicts. See, 6551 Collins Avenue Corporation v. Millen, 104 So.2d 337 (Fla. 1958); Dent v. Casale, 358 So.2d 1101 (Fla.3rd DCA 1978).

II.
We turn now to the issue of sovereign immunity. Absent statutory authorization, the State, its counties, agencies and instrumentalities, are immune from tort liability. Florida Atlantic University, the Board of Regents and the Chancellor of the State University System are agencies and instrumentalities of the State of Florida. In addition to the allegations previously noted, the appellants alleged that the State of Florida had waived sovereign immunity in this case pursuant to Section 768.15, Florida Statutes (1969) which provides:
(1) WAIVER OF IMMUNITY  The State, for itself and its counties, agencies and instrumentalities, waives immunity for liability for the torts of officers, employees or servants committed in the State. The State and its counties, agencies, and instrumentalities shall be liable in the same manner as a private individual, but no action may be brought under this section if the claim:
(a) arises out of the performance or the failure to perform a discretionary function; (emphasis supplied).
Although this statute was subsequently repealed, appellants' cause of action, if any, accrued during its effective dates and is preserved by Section 768.151, Florida Statutes (1971).
Thus, pursuant to § 768.15 sovereign immunity is not waived when the alleged negligence consists of the performance or failure to perform discretionary functions inherent in government planning or policy making. Therefore, we must determine whether the acts of negligence as alleged in appellants' complaint fall within the purview of discretionary, governmental functions. In defining discretionary functions, the Supreme Court of Florida "commended" utilization of the test enunciated in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). The four-pronged test is:
(1) Does the challenged act, omission, or decision necessarily involve a basic *1382 governmental policy, program or objective?
(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?
See, Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1019 (Fla. 1979).
Applying the test to the facts in this case leads us to the conclusion that each question must be answered in the affirmative. We therefore hold that the allegations of negligence fall within the definition of a discretionary function. Whether to provide security guards, parking attendants, security gates, and the numbers thereof, are clearly discretionary decisions, partially based upon budgetary limitations controlled by the Legislature. See, Turner v. United States, 473 F. Supp. 317 (D.D.C. 1979). In many ways, a state university campus resembles a small municipality. In addition to performing its educational function, it provides various other services to its students and the general public. Further, the campuses uniformly encompass rather large areas, and the facilities are open to the public as well as the students. Consequently, the campus security force is in many ways analogous to a municipal police force. As such, the decisions of the campus security force regarding its modus operandi, i.e. where and how to deploy its available manpower, the numbers of security personnel per shift, the use of telecommunications equipment, and the extent of coordination with local law enforcement agencies are discretionary or planning functions. See, Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2nd DCA 1979); Wong v. City of Miami, 237 So.2d 132 (Fla. 1970).
The State and its agencies enjoyed sovereign immunity from suit under the allegations of the complaint and the trial court was correct in granting the motions for judgment on the pleadings in favor of the State and its agencies. We hasten to note that we are not concerned here with a tort committed during the implementation of the security objective, such as the accidental discharge of a weapon by security personnel, or the negligent failure of personnel to perform as instructed or intended.

III.
Although we have decided that sovereign immunity from liability applies in this case, this result does not inure to the benefit of the appellee, Pacific Indemnity Insurance Company, the insurer of the Board of Regents. Section 240.191(2), Florida Statutes (1969) provides:
[T]he insurer shall not be entitled to the benefit of the defense of governmental immunity of the board of regents in any suit brought against the insured...
The immunity from liability of the Board is waived to the extent of the insurance coverage it carries. Nevertheless, we find that the trial court properly entered judgment in the insurance company's favor because no cause of action was alleged or proved by the appellants.
As a basic principle of law, a property owner has no duty to protect one on his premises from criminal attack by a third person. 62 Am.Jur.2d, Premises Liability, § 200 (1972). Even though one's negligence may be a cause in fact of another's loss, he will not be liable if an independent, intervening and unforeseeable criminal act also causes the loss. See, Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175, 177 (Fla. 1976). If, however, the criminal attack is reasonably foreseeable, a duty may arise between a landowner and his invitee. But it must be borne in mind that a landowner *1383 is not an insurer of the safety of his invitees and is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate. See, Totten v. More Oakland Residential House, Inc., 63 Cal. App.3d 538, 134 Cal. Rptr. 29 (1976).
In order to impose a duty upon a landowner to protect an invitee from criminal acts of a third person a plaintiff, invitee, must allege and prove that the landowner had actual or constructive knowledge of prior, similar criminal acts committed upon invitees. The landowner is not bound to anticipate criminal activities of third persons where, as here, the wrongdoers were complete strangers to the landowner and to the victims, and where the incident occurred precipitously. Totten, supra. See also, Shipes v. Piggly-Wiggly St. Andrews, Inc., 238 S.E.2d 167 (S.C. 1977). Appellants simply failed to allege or prove that any prior assaults upon persons had been committed in the area of the abduction and murder, or for that matter, anywhere on the campus. In fact, the proof showed there had not been one serious crime against a person since the school was founded in 1963. The reported incidents involved minor larcenies from automobiles and school buildings, hit and run complaints for minor automobile damage, and miscellaneous incidents such as malicious mischief. These facts do not give rise to the foreseeability of violent assaults which, in turn, may give rise to a duty to protect. Accordingly, there being no duty to protect from the type of conduct which occurred here, the trial court correctly entered judgment for the insurance company.
The final judgments are AFFIRMED.
LETTS, C.J., and MIETTE K. BURNSTEIN, Associate Judge, concur.