[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12282

Non-Argument Calendar

_____

CHARLES P. SAPP, III,
As personal representative of the estate of Lewis Brown, Jr.,

Plaintiff-Appellant,

EDWARD LEWIS BROWN, JR.,

Plaintiff,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:18-cv-00176-AW-GRJ

————————————

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Charles P. Sapp, III, as personal representative of the estate of Edward Lewis Brown, Jr., appeals the district court's order entering judgment in favor of the United States after a bench trial on his negligent security claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).  Mr. Sapp asserts that the district court clearly erred in finding that the physical altercation giving rise to the claim was not reasonably foreseeable.  He objects, in particular, to the district court's reliance upon the testimony of Dr. Uma Surya-devara—a treating psychiatrist at the facility where the attack took place—in making its foreseeability determination.  For the following reasons, we affirm.[1]

————————————

[1] We assume the parties' familiarity with the facts and procedural history and set out only what is necessary to explain our decision.  As to issues not discussed, we summarily affirm.

## I

### A

On September 29, 2015, Mr. Brown was attacked by a fellow psychiatric patient, Cedric Brigham, at the Malcolm Randall VA Medical Center in Gainesville, Florida.  That evening, Mr. Brown and Mr. Brigham were seated next to each other at dinner when Mr. Brigham struck Mr. Brown in the head several times.  Multiple VA staff members were within a few feet of Mr. Brigham and Mr. Brown when the incident took place and intervened immediately.  Unfortunately, the blows to his head caused Mr. Brown to develop a hematoma in his brain.  He later underwent surgery to stop the bleeding.  Mr. Brown eventually recovered and was released to his home, but his mental and cognitive function declined over the next several months.

Mr. Brigham had dementia.  He was placed under the care of the VA's psychiatric facility after being "Baker Acted," *see* Fla. Stat. § 394.467, by a VA physician on August 14, 2015.  Approximately a month before the incident with Mr. Brown, Mr. Brigham reportedly slapped an individual who yelled at him on two separate occasions.  In response to those incidents, Mr. Brigham's treating VA psychiatrists adjusted his medication—a medication meant to treat his mood and behavior—twice.  On September 2, 2015, Mr. Brigham's medication was doubled again.  Records and testimony reflect that Mr. Brigham responded well to the medication and that, in the 27-days preceding the incident with Mr. Brown, he was calm and compliant.

## B

On September 12, 2018, Mr. Brown filed suit under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), in the District Court for the Northern District of Florida, alleging, among other things, that the VA negligently supervised Mr. Brigham on the night of the assault and that his injuries were the result of that negligent supervision.  After filing suit, Mr. Brown died from causes unrelated to this matter, and his Estate was substituted as plaintiff.  The case was tried in the district court in a two-day bench trial on April 19 and 20, 2021.[2]

After the bench trial, the district court issued a final order (the "Order") finding that Mr. Brigham's altercation with Mr. Brown was not reasonably foreseeable.  In its Order, the district court noted that "testimony from the medical staff—Nurses McQueen, Cue, and Duncan, and Dr. Suryadevara—along with the other evidence presented, show there were no signs making it reasonably foreseeable that [Mr.] Brigham would hurt another patient that day."  D.E. 73 at 10.  The district court further noted that, though Mr. Brigham had slapped another individual on two prior occasions during his time at the VA, records reflected that Mr.

---

[2] Mr. Brown also sued under a theory of negligent infliction of emotional distress.  On April 9, 2021, the district court granted the government's renewed motion for summary judgment on that claim and the bench trial proceeded only as to the negligent security claim.

Brigham "was doing well in his interactions with staff and other patients in the month leading up to the assault[,]" that "his behavior had changed for the better, making his past behavior a poor indicator of his future conduct[,]" and that "there was no known animosity between [Mr.] Brigham and [Mr.] Brown to make an altercation foreseeable." *Id.* at 10–12.

As to Mr. Sapp's burden to show foreseeability, the district court explained that "the Estate did not respond in any meaningful way to the changes in [Mr.] Brigham's behavior" and instead "suggested that [Mr.] Brigham's medical condition meant he would *always* be a threat to others—forever—and that the changes in medication could not help" even though "there was no medical testimony or other evidence to support that." *Id.* at 12–13. The district court further found "[t]here was no evidence that [Mr.] Brigham was in a constant state of needing one-to-one monitoring or some other high-level supervision to protect the health and safety of others." *Id.* at 13.

## II

In an appeal from a bench trial, we review the district court's findings of fact for clear error. *See Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F. 3d 1242, 1254–55 (11th Cir. 2016). A factual finding is clearly erroneous when, based on review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id.* at 1255. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quotation marks omitted).

## III

The FTCA allows suit against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Mr. Brown was injured in Florida, and the parties agree that Florida law applies. To succeed on a negligence claim under Florida law, the plaintiff must show that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer actual loss or damages. *See Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004).

A claim for negligent security falls under Florida's law on premises liability. *See Nicholson v. Stonybrook Apartments, LLC*, 154 So. 3d 490, 494 (Fla. Dist. Ct. App. 2015) (finding "negligent security cases fall under the auspices of premises liability as opposed to ordinary negligence"). A defendant's duty of care in a premises liability action depends on the plaintiff's "status" on the land. *See Hammer v. Lee Memorial Health System*, 2020 WL 999775, at *3 (M.D. Fla. Mar. 2, 2020). Mr. Brown was an invitee; as such, the VA owed him a duty to "maintain its premises in a reasonably safe condition," including a duty to protect him "from criminal attacks that are reasonably foreseeable." *Banosmoreno v. Walgreens Co.*, 299 F. App'x 912, 913 (11th Cir. 2008). In other words, under Florida law, "an owner of a premises has no duty to protect an invitee from the willful criminal act of another unless

that conduct could have been foreseen or anticipated." *Stone*, 373 F.3d at 1132.

Under Florida law, foreseeability is ordinarily an issue of fact. *See Wallace v. Dean*, 3 So.3d 1035, 1038 n.18 (Fla. 2009). On appeal, Mr. Sapp raises two claims, or rather, a central claim supported by a second assertion: (1) the district court's finding that Mr. Brigham's attack was not reasonably foreseeable is clearly erroneous; and (2) the district court erred "as a matter of law" by relying upon Dr. Suryadevara's testimony when making its foreseeability determination. We address each point below.

## A

Mr. Sapp's main argument is that the district court clearly erred in finding that Mr. Brigham's attack was not reasonably foreseeable. He asserts that "the preponderance of evidence in this matter establishes that an assault by Mr. Brigham on another patient was, *at all times*, reasonably foreseeable, because the VA Medical Center knew of Mr. Brigham's dangerous propensities; and failed to take reasonable steps to protect the other patients on the ward." Appellant's Initial Br. at 28 (emphasis added). In Mr. Sapp's view, the VA's awareness of Mr. Brigham's prior violent outbursts is insurmountable evidence that the attack on Mr. Brown was reasonably foreseeable. Mr. Sapp asserts that the VA should have segregated Mr. Brigham from all other patients or assigned a VA staff member to monitor him at all times. In other words, any effort made by the VA to protect other patients from potential harm by

Mr. Brigham short of total isolation or one-to-one monitoring would amount to negligence.

We agree with Mr. Sapp that knowledge of an individual's prior violent behavior is important evidence of foreseeability. *See Banosmoreno*, 299 F. App'x at 913. It is not, however, the only evidence a district court may consider when making a foreseeability determination. Here, the district court acknowledged evidence of Mr. Brigham's prior violent outbursts but found testimony and medical records regarding Mr. Brigham's positive response to treatment and medication to be persuasive evidence that his altercation with Mr. Brown was not reasonably foreseeable. Mr. Sapp did not present any medical testimony, expert testimony, or other evidence that contradicts the district court's finding that the VA's intervening treatment sufficiently mitigated Mr. Brigham's potential for aggressive behavior. In our view, therefore, it was not clear error for the district court to find that it was not foreseeable that Mr. Brigham would attack Mr. Brown (or any other patient) at dinner that evening.

## B

Mr. Sapp also argues that "[b]ecause Florida courts recognize the inability of a psychiatrist to predict whether or when any mentally ill individual will do violence to themselves or others, [the district court] committed an error as a matter of law by basing [its] final order on the testimony of [Dr. Suryadevara]." Appellant's Initial Br. at 25. In his reply brief, Mr. Sapp clarifies that he does not assert that psychiatric testimony is inherently unreliable. *See*

21-12282                Opinion of the Court                9

Appellant's Reply Br. at 10.  Rather, he extrapolates that, because Florida law does not generally impose a duty on psychiatrists to lessen the risk that a patient might pose to themselves or others, a psychiatrist's contemporaneous "predictions" regarding how a patient is likely to behave in the future should not hold weight with the court on a foreseeability determination.  *See* Appellant's Initial Br. at 22–27; Appellant's Reply Br. at 10–12.  Mr. Sapp's theory fails for two reasons.

First, Mr. Sapp does not cite to any case law, in Florida or otherwise, extending the rationale animating the extent of a psychiatrist's duty in the negligence context to the appropriate weight a psychiatrist's diagnosis should be given at a trial.  On the contrary, as Mr. Sapp himself recognizes, "a psychiatrist's diagnoses of a patient should be given a high degree of reliability[.]"  Appellant's Reply Br. at 10.  Indeed, where the court is called to make a determination regarding whether a particular psychiatric patient's actions were reasonably foreseeable, it is difficult to imagine an individual better suited to testify on the matter than that patient's treating psychiatrist.[3]

Second, even if Mr. Sapp's theory holds water, the district court did not rely solely upon Dr. Suryadevara's testimony in making its foreseeability determination.  The court explicitly found that

---

[3] We also note that Mr. Sapp did not object to Dr. Suryadevara's testimony, and, in fact, cited to her testimony multiple times in support of his own arguments. *See* D.E. 70 at 9–10.

"the testimony from the medical staff—Nurses McQueen, Cue, and Duncan . . . along with the other evidence presented, show there were no signs making it reasonably foreseeable that [Mr.] Brigham would hurt another patient that day." D.E. 73 at 10. The record is replete with testimony and other evidence reflecting that Mr. Brigham was responding positively to medical treatment and had not displayed any aggressive or violent behaviors in the month preceding his altercation with Mr. Brown.

The district court made clear, moreover, that Mr. Sapp failed to present any evidence that Mr. Brigham required constant one-to-one monitoring or any other increased supervision. On such a record, we find no basis to hold that the district court's finding that the altercation between Mr. Brown and Mr. Brigham was not reasonably foreseeable was clear error, with or without the benefit of Dr. Suryadevara's testimony. *See Fla. Int'l Univ. Bd. of Trustees*, 830 F. 3d at 1255 (holding that a factual finding is clearly erroneous when, based on review of the entire record, we are left with a definite and firm conviction that a mistake has been made).

## IV

We affirm the district court's order entering judgment in favor of the United States.

AFFIRMED.